LYNCHBURG COLLIERY CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3998.   Promulgated June 14, 1927.

> DEDUCTION FOR LOSS.—The taxpayer breached a contract in 1917; settled its liability therefor in 1918; kept its books on the accrual basis; did not admit its liability to the injured party during 1917; did not accrue on its books any reserve to meet the damages during 1917, but did charge off the loss in 1918 when paid and took a deduction therefor in its 1918 tax return. *Held,* return was made in accordance with taxpayer's method of accounting as required by section 212(b) of the Revenue Act of 1918 and it can not now claim the loss as a deduction for 1917.

*A. T. Henderson, C. P. A.,* for the petitioner.
*Shelby S. Faulkner, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in the amount of $18,501.27 in income and profits taxes for the calendar year 1917. The deficiency letter appealed from determined deficiencies for the years 1917 and 1918, but this proceeding involves only the year 1917.

The petitioner alleges that the Commissioner erred in refusing to permit the petitioner to take as a deduction in the year 1917 a loss sustained by reason of the breaching of a contract upon the part of the petitioner.

#### FINDINGS OF FACT.

The Lynchburg Colliery Co. is a West Virginia corporation organized in 1902 and engaged in the business of mining and selling bituminous coal. Its mines and general offices are located at Vanetta, W. Va. J. T. Noell, Jr., the president, resides at Lynchburg, Va., and T. A. Deitz, treasurer and general manager, resides at Charleston, W. Va.

The officers of the petitioner are also the president and manager, respectively, of the Deitz Colliery Co., the mines of which are located about two miles from those of the petitioner.

In June, 1916, J. T. Noell, Jr., as president of the petitioner and of the Deitz Colliery Co., entered into a contract with the West Virginia Coal Co. of Richmond, Va., for the sale of 50,000 tons of coal at a rate of 90 cents per ton for 25,000 tons and 95 cents per ton for 25,000 tons. The petitioner and the Deitz Colliery Co. were to ship 25,000 tons each, shipments to commence on July 1, 1916, and to continue in approximately equal monthly quantities until June 30, 1917.

In July, 1916, a second contract between the parties was entered into which contract called for the shipment of 30,000 tons of coal (the petitioner and the Deitz Colliery Co. to ship 15,000 tons each) at a rate of $1.05 per ton. Shipments under the terms of this contract were to commence on August 1, 1916, and continue in approximately equal monthly quantities until August 1, 1917. The shipments under the second contract were to be made immediately after the shipments under the first contract.

Under the terms of both of the said contracts, the West Virginia Coal Co. was to make payment for the coal shipped during the month succeeding the month of shipment. Neither of the two contracts made any provision for strikes, lockouts, labor difficulties or car shortages.

Monthly shipments on the two contracts were made regularly until December, 1916, when a fire in the mine of the Deitz Colliery Co. caused that company to cease shipments altogether. The petitioner continued monthly shipments of coal from January, 1917, to and including June, 1917, but in smaller quantities than called for by the contracts due to its difficulty in securing labor and cars. During this period from January to June, 1917, the West Virginia Coal Co. continually demanded more coal from the petitioner, threatened suit from time to time and withheld the payment of money due the petitioner for coal already shipped during 1917. In June, 1917, J. T. Noell, Jr., went to Richmond, Va., and had a conference with the officers of the West Virginia Coal Co. and endeavored to secure a guarantee of the payment for all coal shipped, but that company refused to give the guarantee. Noell desired to ship as much coal as the petitioner could to the end of the contract and receive a guarantee of payment therefor. He did not desire to be the plaintiff in an action to recover the money due the petitioner, but would rather have been the defendant, if the West Virginia Coal Co. desired to bring action on account of the undelivered coal.

On June 28, 1917, two days after the above-mentioned conference, Noell sent the following telegram to the West Virginia Coal Co.:

Having had no definite answer to my letter June seventh or to my personal request of day before yesterday, I have wired Deitz today to cease shipping you any coal.

On the same day Noell wired Deitz as follows:

Cease shipping coal to West Virginia Coal Company. Am writing.

At the time the petitioner stopped shipping coal to the West Virginia Coal Co. there were still 13,404 tons of coal due the latter company under the contracts, which required the petitioner to ship 40,000 tons, but the petitioner did not ship any more coal at any subsequent date under those contracts.

Noell testified that he knew that the petitioner was liable on the contracts which it breached, but never formed an opinion as to the extent of its liability because of the conditions surrounding the breach and because he thought the matter could be compromised. During July and October, 1917, T. A. Deitz, treasurer and general manager of the petitioner, had a conference with E. S. Simpson, president of the West Virginia Coal Co., and tried to effect a settlement, but made no definite offers. On one occasion Simpson offered to take 17,700 tons of coal as settlement and on another occasion Deitz offered Simpson $5,000 but merely to feel him out. No basis for compromise was effected during 1917.

In August, 1917, the West Virginia Coal Co. brought attachment proceedings in Chancery Court, Richmond, Va., against the petitioner, the Deitz Colliery Co., and several of the petitioner's debtors located in that city. In the suit the West Virginia Coal Co. claimed damages in the sum of $59,000 against each of the two companies, the petitioner and the Deitz Colliery Co. A motion to dismiss this suit was filed by the two defendant companies on the ground that the attachment was invalid. The defendant's answer was prepared and depositions of the plaintiff's witnesses were taken, but the case never came to trial.

During the fall of 1917, Deitz wrote Noell many letters urging him to compromise and in December, 1917, Deitz wrote Noell that he thought the West Virginia Coal Co. would get judgment if the case was tried, but that he also thought they could settle for about $20,000. Also, Deitz suggested to Noell that the liability should be compromised and settled prior to the close of the year 1917, so that a deduction for the amount of the loss could be taken for that year. However, it appears that Noell had hopes of having the suit dismissed. No evidence has been submitted to the effect that the petitioner actually admitted liability to the West Virginia Coal Co. during 1917.

Some time during 1918 the attorney for the petitioner and the Deitz Colliery Co. convinced the West Virginia Coal Co. that the Deitz Colliery Co. was not liable for the breach of its contracts because the fire in its mines rendered it impossible to make delivery of coal and, also, that the petitioner was not liable for the Deitz Colliery Co.'s breach of contract as had been claimed by the West Virginia Coal Co. In November, 1918, the petitioner's liability, for its failure to ship the full 40,000 tons of coal required under the two contracts, was compromised for $25,000, which amount the petitioner paid by check; the suits were dismissed, and the West Virginia Coal Co. paid the petitioner by check $2,190.77, which amount stood on

the petitioner's books on December 31, 1917, for coal shipped to the West Virginia Coal Co. under the contracts but not paid for.

The petitioner kept its books and made its tax returns on the accrual basis. In the year 1917, the petitioner did not accrue on its books any approximately accurate estimate of its liability as a reserve to meet the damages, but it did charge off $2,190.77, the amount owed it by the West Virginia Coal Co. for coal shipped, and in its 1917 tax return deducted the said amount as a bad debt. In 1918 the petitioner entered upon its books as a loss the difference between $2,190.77 and the $25,000 paid in 1918 in settlement of its liability under the breached contracts and deducted that amount as a loss in its 1918 tax return.

The Commissioner disallowed the deduction of $2,190.77 as a bad debt deduction for 1917 and allowed the petitioner a deduction of the full $25,000 as a loss for the year 1918. No amended returns for the years 1917 and 1918 have been filed.

## OPINION.

TRUSSELL: Under the facts set forth in this proceeding, the petitioner claims it is entitled to a deduction of $25,000 as a loss for the year 1917 and the Commissioner's position is that the said deduction has been properly allowed by him for the year 1918.

While the liability to respond in damages for the breach of two coal contracts may have attached during the year 1917, the petitioner corporation did not appear to recognize such liability in any amount. It did not set up upon its books any liability on account of such breach of contracts or recognize the same in any way in its accounting system until the year 1918, when it settled its liability by the payment of the sum of $25,000. At that time it entered the amount so paid as an expense for the year 1918.

In the audit of this petitioner's income and profits-tax returns for the years 1917 and 1918, the respondent has allowed the deduction of the $25,000 as and when claimed by the petitioner in accordance with its books of account. The petitioner now claims a deduction for the year 1917 while still retaining and holding the benefit of the same deduction for the year 1918. The $2,190.77 originally claimed by petitioner as a bad debt for the year 1917 was not ascertained to be worthless during that year and was properly restored to gross income for the year 1917 and the full amount of $25,000 appears to have been allowed for the year 1918.

> *The deficiency for the year 1917 is $18,501.27.*
> *Judgment will be entered accordingly.*